IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ECMC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-220-WKW |
| | ) | [WO] |
| ALEXANDRA ELIZABETH | ) | |
| ACOSTA-CONNIFF, | ) | |
| | ) | |
| Appellee. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This action is before the court on the mandate of the U.S. Court of Appeals for the Eleventh Circuit. (Doc. # 35.) The Eleventh Circuit vacated this court's judgment and remanded this action for further proceedings in accordance with its instructions. (Doc. # 34.) For the reasons that follow, this action will be remanded to the bankruptcy court for additional factual findings and legal determinations.

## **I. BACKGROUND**

On review of the bankruptcy court's determination that Appellee Alexandra Elizabeth Acosta-Conniff's ("Ms. Conniff") student loan debt was dischargeable under 11 U.S.C. § 523(a)(8), this court reversed the judgment of the bankruptcy court. It found that Ms. Conniff failed to demonstrate the requisite "additional circumstances" to satisfy the second prong of the three-part *Brunner* test, which this circuit has adopted when considering the dischargeability of student loan debt. *See*

*Brunner v. N.Y. State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987); *Hemar Ins. Corp. of Am. v. Cox (In re Cox)*, 338 F.3d 1238, 1241–42 (11th Cir. 2003). On appeal, the Eleventh Circuit vacated the decision and remanded with instructions to "apply clear-error review to the bankruptcy court's factual findings as to <u>each</u> prong of the Brunner test and *de novo* review to any of the bankruptcy court's legal conclusions." *ECMC v. Acosta-Conniff (In re Acosta-Conniff)*, 686 F. App'x 647, 650 (11th Cir. 2017) (emphasis in original). In its opinion, the Eleventh Circuit noted that it may be necessary for this court to remand this action to the bankruptcy court for additional findings of fact. *Id.* at 650 & n.1.

As predicted by the Eleventh Circuit, remand is necessary. When reviewing a bankruptcy court's decision, "the district court . . . is [not] authorized to make independent factual findings." *Equitable Life Assurance Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1384 (11th Cir. 1990). "If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court . . . must remand the case to the bankruptcy court for the necessary factual determination." *Id.* (citing *Wegner v. Grunewaldt,* 821 F.2d 1317, 1320 (8th Cir. 1987)). Here, the facts are insufficiently developed for this court to determine whether Ms. Conniff has met her burden of proving *Brunner*'s three requirements, and there are issues of fact that the bankruptcy court must clarify before it can

determine—and this court can review—whether Ms. Conniff has satisfied *Brunner*'s requirements.

## II. DISCUSSION

In its opinion vacating this court's decision reversing the bankruptcy court's discharge order, the Eleventh Circuit set out the elements of the *Brunner* test that Ms. Conniff must prove to obtain a discharge of her student debts:

> Under the *Brunner* test, a debtor is entitled to discharge of her student debts if she proves all of the following:
>
> (1) That the debtor cannot maintain, based on current income and living expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) That the debtor has made good faith efforts to repay the loans.

*In re Acosta-Conniff*, 686 F. App'x 647, 648 (11th Cir. 2017) (citing *Brunner*, 831 F.2d at 396). The Eleventh Circuit reiterated that "[t]he debtor bears the burden of proving each prong of the *Brunner* test by a preponderance of the evidence." *Id.* at 649 (citing *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324 (11th Cir. 2007)).

### A.   <u>Minimal Standard of Living</u>

The first prong of the *Brunner* test is whether the debtor can maintain a "'minimal' standard of living for herself and her dependents if forced to repay the

loans." *Brunner*, 831 F.2d at 396. A "minimal standard of living" is not one of abject poverty, but it does require "more than a showing of tight finances." *Penn. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995). When conducting this analysis, courts compare a debtor's disposable income, determined by the difference between monthly income and reasonable and necessary monthly expenses, with the monthly payment necessary to repay the student loans. *See Douglas v. Educ. Credit Mgmt. Corp. (In re Douglas)*, 366 B.R. 241, 253–55 (Bankr. M.D. Ga. 2007). A court making this determination "must apply its common sense knowledge gained from ordinary observations in daily life and general experience to determine whether [a debtor's] expenses are reasonable and necessary." *Id.* at 253.

The bankruptcy court calculated Ms. Conniff's monthly student loan payment to be $915. (Doc. # 1-3, at 2.) In doing so, the bankruptcy court took judicial notice of the variables involved, apparently because it found the facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). The bankruptcy court explained that it "fill[ed] the gap in Conniff's proof" when it made this calculation because Ms. Conniff, who was not represented by counsel, could not competently submit the evidence needed to make this calculation. (Doc. # 1-3, at 2 & n.2.)

Meanwhile, Ms. Conniff's student-loan creditor, Educational Credit Management Corp. ("ECMC"), argued that a much lower payment—$346 per

month—was the benchmark. It explained that, if Ms. Conniff participated in an income contingent repayment plan ("ICRP"), her monthly payment would be $346, not $915. (Doc. # 1-3, at 12.)

Disposing of ECMC's argument, the bankruptcy court found that similar arguments "have been rejected both by the Eleventh Circuit and by this Court." (Doc. # 1-3, at 12.) The bankruptcy court string-cited four cases to support its contention that it need not consider what Ms. Conniff's payments would be were she to enroll in an ICRP. (*See* Doc. # 1-3, at 12 (citing *Mosley*, 494 F.3d at 1327; *McLaney v. Ky. Higher Educ. Assistance Auth. (In re McLaney)*, 375 B.R. 666 (M.D. Ala. 2007); *Al-Riyami v. U.S. Dep't of Educ. (In re Al-Riyami)*, No. 12-80935, 2014 WL 2800815 (Bankr. M.D. Ala. Jan. 6, 2014), *aff'd*, No. 3:14-CV-73, 2014 WL 1584481 (M.D. Ala. Apr. 21, 2014); *Bumps v. Wells Fargo Educ. Fin. Servs. (In re Bumps)*, No. 6:11-BK-06677, 2014 WL 185336 (Bankr. M.D. Fla. Jan. 15, 2014).)

Because this court previously resolved this case on *Brunner*'s second prong, it found it unnecessary to consider the first and third prongs. (*See* Doc. # 21, at 13 & n.7.) Now, on review of the bankruptcy court's decision, this court finds that the bankruptcy court committed errors of law and fact in its analysis of whether Ms. Conniff satisfied *Brunner*'s first prong. Those errors fall into three categories.

The bankruptcy court's first error—a legal one, which this court reviews *de novo*—was its misapplication of the Eleventh Circuit's decision in *Mosley*, and the

5

non-binding lower-court decisions in *McLaney*, *Al-Riyami*, and *Bumps* to find that potential ICRP payments were not relevant to the court's analysis of the first *Brunner* prong. The bankruptcy court failed to recognize that each of these cases is distinguishable from the instant case. Three of the four cases, including *Mosley*, did not address the debtor's ICRP eligibility at the first *Brunner* prong. In *Mosley*, the Eleventh Circuit considered the ICRP under the good-faith factor of the *Brunner* test, rather than the minimal-standard-of-living factor. It noted that "courts have rejected a *per se* rule that a debtor cannot show good faith where he or she has not enrolled in the [ICRP]." *Mosley*, 494 F.3d at 1327 (citing *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 402–03 (4th Cir. 2005)). Determining that Mosley had met the good-faith standard, despite his not applying for an ICRP, the Eleventh Circuit noted that his "dire living conditions and persistent inability to obtain steady work" were such that the ICRP would not have provided "a realistic solution to his inability to pay." *Id.* This court, in *McLaney,* made a similar determination, noting that "declining to participate in a refinancing program when disposable income is insufficient to cover even the reduced payments is not indicative of bad faith." 375 B.R. at 678. The facts of *Al-Riyami* are similar. *See Al-Riyami*, 2014 WL 2800815, at *4 (determining at *Brunner*'s third prong that requiring the debtor to enroll into an ICRP would be a "fruitless exercise" and that the debtor's failure to participate in such a program did not preclude a finding of

good faith). Hence, these decisions do not support the bankruptcy court's legal conclusion that the first *Brunner* element does not permit consideration of a reduced payment plan under an ICRP.

There is an additional distinction shared by these cases that the bankruptcy court overlooked. The courts, including the Eleventh Circuit, considered the lower ICRP payments but then concluded that the lower payments still were so high as to pose an undue hardship on the debtor. *See Mosley*, 494 F.3d at 1327; *McLaney*, 375 B.R. at 678; *Al-Riyami*, 2014 WL 2800815, at *4. *See also Bumps*, 2014 WL 185336, at *3 (noting that the debtor did not have enough disposable income to afford the reduced ICRP payment). Therefore, under the factual situations presented in those cases, the ICRP did not provide realistic solutions so that the debtors could have repaid their loans. Here, on the other hand, there is a factual finding that Ms. Conniff could eliminate her voluntary retirement contribution and possibly "squeeze a couple of hundred more out of her budget." (Doc. # 1-3, at 11.) Ms. Conniff's voluntary retirement contribution is $220. If Ms. Conniff can "squeeze a couple of hundred more out of her budget," it may be that she could reasonably make a monthly ICRP payment of $346. Accordingly, the bankruptcy court's reliance on these cases constitutes legal error because the court misapplied the law to the facts at issue. *Acosta-Conniff*, 686 F. App'x at 649 (noting that "a bankruptcy court's

interpretation of any legal question pertinent to its fact finding" is subject to *de novo* review).

The bankruptcy court's second error pertains also to *Brunner*'s first requirement and is closely related to its first error: The bankruptcy court failed to determine whether Ms. Conniff was eligible for an ICRP and, consequently, did not consider whether participation in an ICRP would affect Ms. Conniff's ability to maintain a minimal standard of living while making payments on her debt. As will be explained, this error is both legal and factual.

The bankruptcy court committed legal error by improperly applying *Brunner* and not deciding whether Ms. Conniff could make a reduced ICRP payment. There is a split of authority as to how—and whether—courts should consider ICRP payments when deciding this first *Brunner* prong. Notwithstanding the approach taken by one bankruptcy court in this circuit, this court finds that ICRP eligibility and monthly ICRP payments should be considered under the first *Brunner* prong.

In *Johnson v. Education Credit Management Corporation (In re Johnson)*, 299 B.R. 676 (Bankr. M.D. Ga. 2003),[1] the bankruptcy court considered the dischargeability of husband-and-wife debtors' student loan debt. There, "[b]ased on the undisputed evidence, the Johnsons qualif[ied] for the ICRP." *Id.* at 683. Even

---

[1] *Johnson* was decided less than one week before the Eleventh Circuit formally adopted *Brunner* in *Cox*. *See Cox*, 338 F.3d at 1241–42. The *Johnson* court specifically noted that it did "not consider these *Brunner* elements to be either exhaustive or conclusive." 299 B.R. at 680.

though the ICRP payments may have been as low as $0 per month, the bankruptcy court nevertheless refused to consider the ICRP payments, instead choosing only to "consider whether the repayment of those loans in full under the debtor's current and foreseeable future circumstances would create an undue hardship without reference to the ICRP." *Id.* The court reasoned that considering the availability of ICRP payments "forces a debtor who has no ability to pay his student loans in full to defer discharge for 25 years" in place of having the loans discharged immediately. *Id.* Such a result, according to the court, could not be squared with the existence of the availability of discharge under § 523(a)(8) and the "'fresh start policy of the Bankruptcy Code.'" *Id.* (quoting *Waterson v. Penn. Higher Educ. Assistance Agency (In re Waterston)*, No. 01-1060, 2002 WL 31856714, at *8 (Bankr. E.D. Pa. Nov. 26, 2002). *See also Crawley v. Educ. Credit Mgmt. Corp. (In re Crawley)*, 460 B.R. 421, 438 (Bankr. E.D. Pa. 2011) ("To hold otherwise would make eligibility in the ICRP outcome determinative in undue hardship determinations under § 523(a)(8) and would result in the delegation to an administrative agency, the Department of Education, the authority to determine the dischargeability of certain student loans.").

This approach, however, is not the rule of this circuit, and other bankruptcy courts have not followed *Johnson*'s lead. *See, e.g., Sturtevant v. Educ. Credit Mgmt. Corp. (In re Sturtevant)*, No. 6:09-BK-08565, 2011 WL 1656111 at *3 (Bankr. S.D. Fla. Apr. 26, 2011) (considering availability of federal loan consolidation program

under *Brunner*'s first prong). And more importantly, such an approach is at odds with a commonsense application of *Brunner* and ignores the high bar that a debtor must reach in order to satisfy *Brunner*'s requirements. Simply put, neither § 523(a)(8) nor *Brunner* precludes the bankruptcy court from considering ICRP payments; indeed, if such payments affect a debtor's ability to maintain a minimal standard of living—a necessary element for discharge under *Brunner*—it follows that the bankruptcy court *must* consider such programs. Moreover, this court does not find persuasive *Johnson*'s reference to congressional intent and the relationship between federal ICRPs and § 523(a)(8). A rule that prohibited bankruptcy courts from considering ICRPs under *Brunner*'s first prong

> would yield an absurd result: almost every debtor would satisfy Prong 1 easily if courts were restricted to considering only the amount of their [original] contract payment. Congress's creation of the flexible income-based repayment options reflects an intent that debtors not be automatically or easily excused from their student loan obligations.

*Educ. Credit Mgmt. Corp. v. Beattie*, 490 B.R. 581, 588 (W.D. Wash. 2012). Especially when considered in light of the principle that "Congress intended to make it difficult for debtors to obtain a discharge of their student loan indebtedness," *Cox*, 338 F.3d at 1243, consideration of ICRP eligibility and payment amounts is appropriate and required under *Brunner*'s first prong.

Apart from these considerations, the Eleventh Circuit has suggested, in an unpublished opinion, that consideration of ICRP payments is appropriate when

applying *Brunner*'s first prong. *See Wieckiewicz v. Educ. Credit Mgmt. Corp.*, 443 F. App'x 449, 451 (11th Cir. 2011) (per curiam). In *Wieckiewicz*, the Eleventh Circuit considered the district court's dismissal of a bankruptcy appeal. The appeal was dismissed because the debtor failed to comply with a bankruptcy court order to apply for a federal loan consolidation program. *Id.* at 450. Affirming the dismissal, the Eleventh Circuit held that the debtor's

> eligibility under the [federal loan consolidation program] would play a substantial role in whether he would be able to show undue hardship under *Brunner*. If he qualified for the [program,] Wieckiewicz's loan payments could have been reduced to $0 per month, and eventually the loans would be forgiven. On the other hand, if Wieckiewicz did not qualify, the bankruptcy judge indicated a strong likelihood that Wieckiewicz's loan payments were high enough that he would be able to establish undue hardship under *Brunner* because he would not be able to maintain a minimal standard of living.

*Id.* at 451. Though the Eleventh Circuit did not explicitly sanction the consideration of ICRPs under *Brunner*'s first prong, *Wieckiewicz*'s treatment of the issue suggests that this approach is proper, and this court finds that consideration of ICRP eligibility and payments is appropriate here. The bankruptcy court's failure to determine Ms. Conniff's eligibility for the ICRP was legal error. This legal error left the record bereft of essential factual findings.

More specifically, the bankruptcy court's failure to develop the record and consider the relevant "outcome determinative" facts, *see Sublett*, 895 F.2d at 1384, constitutes clear error that requires a remand for further findings of fact. As

11

explained above, whether Ms. Conniff was eligible to participate in an ICRP may be outcome determinative under the first *Brunner* prong; if she could afford an ICRP payment while maintaining a minimal standard of living, *Brunner*'s first requirement is not satisfied. Accordingly, on remand, the bankruptcy court must find whether Ms. Conniff is eligible to participate in such a program and, if she is, what the monthly payment would be.

Finally, the bankruptcy court's third error is that its calculation of Ms. Conniff's monthly expenses is clearly erroneous. There is no indication in the record that, when determining that Ms. Conniff could not maintain a minimal standard of living if forced to repay the loans, the bankruptcy court performed an itemized analysis of Ms. Conniff's budget to determine which expenses were reasonable and which were not. (*See* Doc. # 21, at 7 ("The bankruptcy court did not indicate whether it had determined that all of the Schedule J expenses were reasonable and necessary for the support of Conniff and her two dependent sons. The record is mostly silent as to this fact-bound undertaking.").) Because this court cannot make those findings of fact and those findings are needed to decide *Brunner*'s first prong, the bankruptcy court must develop the record and make findings as to the reasonableness of Ms. Conniff's monthly expenses.

Ultimately, consistent with the foregoing, the bankruptcy court must make specific findings of fact and conclusions of law as to whether Ms. Conniff has met

her burden of showing that she cannot maintain a "'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner*, 831 F.2d at 396.

B. <u>**Additional Circumstances**</u>

The second prong of the *Brunner* test requires that additional circumstances exist such that the debtor's "'state of affairs is likely to persist for a significant portion of the repayment period of the student loans.'" *Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396). Vacating the decision that Ms. Conniff did not satisfy this requirement, the Eleventh Circuit held that this court "did not . . . indicate whether it was applying a clear error or a *de novo* standard of review when it considered the bankruptcy court's finding as to the second prong of the *Brunner* test" and that it could not "confidently conclude that the court was applying a clear error standard." *Acosta-Conniff*, 686 F. App'x at 650–51. This court recognizes that it considered portions of the record not cited by the bankruptcy court, reasoning that the bankruptcy court found the debtor's testimony to be "forthright and credible." (*See* Doc. # 21, at 3.) Drawing conclusions from Ms. Conniff's testimony, this court made findings of fact where the bankruptcy court had not. Because this court cannot do so, the bankruptcy court must make findings of fact to support its conclusion with respect to *Brunner*'s second prong.

In its opinion, the bankruptcy court cited almost no evidence to support its conclusion that Ms. Conniff bore her burden of demonstrating the requisite

13

additional circumstances. (*See* Doc. # 1-3, at 13 ("This was established by the evidence offered at trial.").) The apparent lack of evidence constitutes "silence . . . as to an outcome determinative factual question" that this court cannot cure. *Sublett*, 895 F.2d at 1384. Therefore, on remand, the bankruptcy court should make findings including, but not limited to, Ms. Conniff's current and future childcare expenses; Ms. Conniff's current and future child support benefits; Ms. Conniff's ability to apply for higher paying jobs; the existence of annual pay raises; Ms. Conniff's decision to stay in the same geographical area; and Ms. Conniff's ability to pursue additional work alongside her current employment as a teacher.

Regardless of which facts the bankruptcy court finds on remand, it must recite the facts that support its legal conclusion—which "additional circumstances," if any, indicate that Ms. Conniff's "state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. Ms. Conniff bears the burden of establishing each of *Brunner*'s three prongs, a burden that her initial *pro se* status[2] did not affect. Once those facts are developed, this court will be able to review—applying a clear error standard—the bankruptcy court's

---

[2] Ms. Conniff appeared *pro se* in the bankruptcy court and here. She had counsel on appeal, according to the Federal Reporter and this court's electronic record (*see, e.g.*, Doc. # 33). After the entry of the Eleventh Circuit's mandate, counsel also appeared on Ms. Conniff's behalf in this court. (*See* Docs. # 36–39.) Counselled or not, Ms. Conniff bears the burden of proving all three *Brunner* prongs.

findings of fact and consider whether Ms. Conniff has satisfied her burden to establish the "additional circumstances" that *Brunner*'s second prong requires.

C.  **Good Faith**

The third and final prong of the *Brunner* test requires the debtor to have made good-faith efforts to repay the loans. *Cox*, 338 F.3d at 1241. A debtor's "failure to make a payment, standing alone, does not establish a lack of good faith." *Mosley*, 494 F.3d at 1327 (quoting *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1311 (10th Cir. 2004) (internal quotation marks omitted)). "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses; [her] default should result, not from [her] choices, but from factors beyond [her] reasonable control." *Id.* "A lack of bad faith is not the applicable test," and "[a]ctual payments are not required to prove good faith." *Douglas*, 366 B.R. at 259.

Moreover, while failure to apply for an ICRP is not *per se* a lack of good faith, efforts to negotiate a repayment plan are a demonstration of intent to repay the loans in good faith. *Mosley*, 494 F.3d at 1327; *see also Wieckiewicz*, 443 F. App'x at 451–52. Enrollment in loan consolidation and repayment plans is "an important component of the good-faith inquiry" because "it illustrates that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances." *Frushour*, 433 F.3d at 402. Ms. Conniff must meet her burden to establish the third prong of the *Brunner* test.

The bankruptcy court based the good-faith decision on the actual payments made, Ms. Conniff's communication with the creditor in obtaining deferrals, and her applications for loan forgiveness based on teaching in a rural area. (Doc. # 1-3, at 13.) Ms. Conniff negotiated a deferral status for her loans for several years, paid over $9,000 toward her loans, and applied three times to a program that would forgive $17,500 of the loans for every five years she spends teaching in a rural area. (Doc. # 1-3, at 3–4.) These were relevant considerations. However, the bankruptcy court clearly erred by not also factoring into its analysis Ms. Conniff's efforts, if any, to minimize her expenses, to maximize her income, and to apply for an ICRP. In light of the opinions of the Eleventh Circuit and this court, on remand the bankruptcy court should reexamine its factual findings and conclusions of law on *Brunner*'s third prong.

### III. CONCLUSION

For the foregoing reasons, the bankruptcy court must make additional findings of fact and conclusions of law as to whether Ms. Conniff has satisfied her burden of proving each of the three *Brunner* elements. Accordingly, it is ORDERED that this case is REMANDED to the bankruptcy court for further fact-finding and legal determinations consistent with the Eleventh Circuit's and this court's opinions.

DONE this 5th day of January, 2018.

                                        /s/ W. Keith Watkins
                              CHIEF UNITED STATES DISTRICT JUDGE